UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,
　　　　　　　Plaintiff,

v.

$103,342.22 IN U.S. CURRENCY, and,
$4,468.18 IN U.S. CURRENCY,
　　　　　　　Defendants.

05 CV 10515 REK

RECEIPT # _____
Civil Action No: AMOUNT _____ N/A
SUMMONS ISSUED ___ 3
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK ____ M.V.
DATE ___ 3/1-/05

MAGISTRATE JUDGE _____

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A), alleges that:

1.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345, 1355, and 1356. Venue is appropriate pursuant to 28 U.S.C. § 1395.

2.  The _in rem_ defendant properties are now, and, during the pendency of this action, will be within the jurisdiction of this Court.

3.  The defendant properties are identified as:

- $103,342.22 in U.S. Currency, representing the contents of bank account number 8620008235, held in the name of MAQ Technologies, Inc./ Mohammed A.R. Quaraishi, at Charter One Bank, NA (the MAQ Charter One account); and,

- $4,468.18 in U.S. Currency, representing the contents of bank account number 8620398000, held in the name of Mohammed A.R. Quaraishi at Charter One Bank, (the Rasheed Charter One personal account)

(collectively referred to as the "Defendant Accounts").

4.     As detailed in the Affidavit of United States Bureau of Immigration and Customs Enforcement Supervisory Special Agent Richard M. Deasy, attached hereto as Exhibit A, and incorporated herein by reference, the United States has probable cause to believe that the Defendant Accounts were involved in and were used to conduct and to facilitate money laundering activities, in violation of 18 U.S.C. §1956. Specifically, as described below, the MAQ Charter One account and the Rasheed Charter One personal account were involved in and/or were used to facilitate financial transactions involving the proceeds of unlawful activities, namely encouraging or inducing an alien to come to, enter, or reside in the United States, in violation of 8 U.S.C. §1324(a)(1)(A)(iv), and fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. §1546. These transactions were designed, in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of above-listed unlawful activities, in violation of 18 U.S.C. §1956(a)(1)(B)(i), and/or were conducted with the intent to promote the carrying on of the above-listed unlawful activities, in violation of 18 U.S.C. §1956(a)(1)(A)(i).

5.     The Defendant Accounts, therefore, are subject to seizure and forfeiture tc the United States of America, pursuant to 18 U.S.C. §981(a)(1)(A).

2

WHEREFORE, the United States of America prays:

1.    That a warrant and monition, in the form submitted herewith, be issued to the United States Bureau of Customs and Border Protection, commanding them to:  (a) take custody of the Defendant Accounts, and (b) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2.    That judgment of forfeiture be decreed against the Defendant Accounts;

3.    That thereafter, the Defendant Accounts shall be disposed of according to law; and

4.    For costs and all other relief to which the United States may be entitled.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:  JENNIFER H. ZACKS
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: 3/18/05

3

VERIFICATION

I, Richard M. Deasy, Supervisory Special Agent, United States Bureau of Immigration and Customs Enforcement, state that I have read the foregoing Verified Complaint for Forfeiture In Rem and the Affidavit, attached as Exhibit A, and that the contents thereof are true to the best of my knowledge, information and belief.

Richard M. Deasy,
Supervisory Special Agent
United States Bureau of Immigration
and Customs Enforcement

Dated: 3/18/2005

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                    Boston

Then personally appeared before me the above-named Richard M. Deasy, Supervisory Special Agent, United States Bureau of Immigration and Customs Enforcement, who acknowledged the foregoing to be true to the best of his knowledge, information, and belief, on behalf of the United States of America.

Subscribed to and sworn to before me this _____8th_____ day of March, 2005.

Lisa J. Talbot
Notary Public
My commission expires: 5/29/09

LISA J. TALBOT
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 29, 2009

4

## AFFIDAVIT OF SPECIAL AGENT RICHARD M. DEASY

I, Richard M. Deasy, being duly sworn, hereby depose and state as follows:

1. I am a Supervisory Special Agent of the United States Bureau of Immigration and Customs Enforcement ("ICE") and have been employed as a Special Agent and Supervisory Special Agent for approximately thirteen years. For the past two years, I have been assigned to the Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force ("JTTF") in Boston, Massachusetts. During my employment as a Special Agent with ICE, I have been involved in numerous investigations concerning alien smuggling and the unlawful procurement of immigration benefits by means of fraud. I have also conducted numerous investigations concerning the fraudulent procurement, sale, and distribution of United States identification documents to include passports, visas, and immigration documents. One of my responsibilities is the investigation of the fraudulent acquisition of United States visas in the context of alien smuggling and employment fraud. In addition, my responsibilities include the investigation and detection of money laundering activities related to criminal activities involving immigration, including the procurement of fraudulent documents, alien smuggling and immigration fraud. I have received training in the identification and tracing of illegal proceeds and I am familiar with the methods commonly used to launder proceeds of illicit activities and I have been involved in several money laundering

investigations involving the proceeds of immigration-related criminal activities.

2. As a result of my personal participation in this investigation, in addition to my conversations with other law enforcement agents and officers and my analysis of reports and other documents prepared or used in the course of this investigation, I am familiar with all aspects of this investigation. I submit this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information that I have received from a variety of other sources, including other law enforcement officers and agents, public records and reports.

3. I submit this affidavit in support of a Complaint for Forfeiture in Rem against the following property:

> a. $103,342.22 in U.S. Currency, representing the contents of bank account number 8620008235, held in the name of MAQ Technologies, Inc./ Mohammed A.R. Quaraishi, at Charter One Bank, NA (the "MAQ Charter One account"); and,
>
> b. $4,468.18 in U.S. Currency, representing the contents of bank account number 8620398000, held in the name of Mohammed A.R. Quaraishi at Charter One Bank, (the "Rasheed Charter One personal accountL"),

(collectively referred to as the "Defendant Accounts").

4. As discussed in more detail below, I have probable cause to believe that the above-described Defendant Accounts were involved in and were used to conduct and to facilitate money laundering activities, in violation of 18 U.S.C. §1956 and

-2-

therefore, are subject to seizure and forfeiture to the United States, pursuant to 18 U.S.C. §981(a)(1)(A).

5. Specifically, as described below, the MAQ Charter One account and the Rasheed Charter One personal account were involved in and/or were used to facilitate financial transactions involving the proceeds of unlawful activities, namely encouraging or inducing an alien to come to, enter, or reside in the United States, in violation of 8 U.S.C. §1324(a)(1)(A)(iv), and fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. §1546. These transactions were designed, in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of above-listed unlawful activities, in violation of 18 U.S.C. §1956(a)(1)(B)(i), and/or were conducted with the intent to promote the carrying on of the above-listed unlawful activities, in violation of 18 U.S.C. §1956(a)(1)(A)(i).

### *Factual Background*.

6. This case involves a visa fraud and fraudulent alien employment scheme conducted by three brothers: Mohammed Abdul Aziz Quraishi a/k/a Quaraishi (Aziz), Mohammed Abdul Rasheed Quraishi (Rasheed) and Mohammed Abdul Qayium Quraishi (Qayium). The Quraishi brothers established two companies: Megasystems, Inc., and MAQ, and established bank accounts in the names of these entities, including the MAQ Charter One account referenced above.

-3-

In addition, Rasheed established the Rasheed Charter One personal account referenced above. Furthermore, as described below, the Quarashi brothers maintained a condominimum that they used to house aliens involved in their fraudulent employment scheme.

7.   The Quraishi brothers used the MAQ Charter One account and the Rasheed Charter One personal account to conduct the fraudulent visa scheme, whereby they would assist aliens in illegally remaining in the United States by fraudulently claiming that these aliens worked for MAQ and/or Megasystems. Specifically, as outlined below, money would be paid from the MAQ Charter One account to an alien, along with fraudulent pay stubs, falsely representing that the alien was employed by MAQ and/or Megasystems. After having received the "salary" payments from the MAQ Charter One account, the alien would repay the purported salary payments and an additional fee determined by Rasheed. These payments by the alien would be deposited in the Rasheed Charter One Personal account.   Subsequently, Rasheed would transfer money from the Rasheed Charter One personal account back to the MAQ Charter One account. This fraudulent employment scheme provided the alien with false documentation, allowing him to obtain visas and reside illegally in the United States.

## Statutory and Regulatory Background: United States H-1B Visa Program

8.   The Immigration and Nationality Act ("INA") allows employers to sponsor the admission of an alien into the United

-4-

States to perform services in a specialty occupation.   Under 8 U.S.C. §1153(b)(3)(A), the H-1B visa program, an alien seeking to come to the United States to work may obtain a non-immigrant visa in order to perform skilled labor in the United States.   The visa is valid for three years, with the option of an additional three-year extension.   An alien already lawfully admitted in the United States pursuant to an H-1B visa may apply for an extension for one year if he or she changes employers.   Such visas may not be granted, however, unless the Secretary of Labor certifies that the employer has a valid employment opportunity that he or she is attempting to fill ("the Labor Certification.")

9.   Pursuant to 20 C.F.R. §656.21, the Labor Certification may be obtained by filing a Department of Labor ("DOL") Labor Certification Application for alien employment certification, officially known as a form ETA 9035.   The application must be completed and signed by the prospective employer.   In the application, the employer attests that the employer has a specific job to fill, describing the nature, location, wages, and requirements of the job.

10.   Once DOL approves the application and issues a Labor Certification, the approved application is returned to the employer, who then files Form I-129, a non-immigrant visa application, with the Department of Homeland Security Bureau of Citizenship and Immigration Services.   Signed under the pains and

-5-

penalties of perjury, the employer identifies the particular alien that the employer wants to hire to fill the job identified in the Labor Certification, as well as the nature and requirements of the job and wages to be paid. The DOL certification is attached to Form I-129. If approved, ICE issues Form I-797, Notice of Action, to the State Department indicating its concurrence with DOL.

11. If the alien resides outside the United States, he/she is required to file Department of State Form-156 with the American Embassy or Consulate. A subsequent in-person interview is conducted to determine whether the individual is qualified for the prospective job. If she or he is qualified, the Department of State approves and issues a visa to permit the alien to come to the United States and accept the job identified in the Labor Certification. If the alien is already lawfully in the country pursuant to an H-1B visa and is changing jobs, then the application is sent to the Department of State for approval without an in-person interview.

12. The INA requires each sponsoring employer to be liable and responsible for the non-immigrant authorized work based upon an H-1B visa. Each H-1B applicant is required to maintain an active employment status with the petitioning company, or to obtain the approval of the Department of Labor and the Bureau of Citizenship and Immigration Services to change jobs. An alien-employee who fails to maintain that employment status falls out of status and is

subject to removal proceedings. In addition, the sponsor company is responsible for the continued employment and salary of the sponsored alien. If the alien has a change of status (by leaving the job) or changes occur in his/her employment, the sponsoring employer is required to notify DHS.

## *Overview of Megasystems Inc., MAQ Technologies and their Officers*

13.    Megasystems, Inc. ("Megasystems") is a Massachusetts-based corporation that was established in November 1997. Megasystems advertises itself as a "specialty services firm providing complete software solutions to its clients" whose goal is to be "universally recognized as providing technical specialty services." The Chief Executive Officer is listed as Abdul Aziz Quraishi.

14.    A corporate entity that is related to Megasystems is MAQ Technologies, Inc. ("MAQ Technologies"), previously headquartered at 504 Sherman Street, Canton, Massachusetts, and currently located at 953 N. Plum Grove, Schaumburg, Illinois. Both Megasystems and MAQ Technologies claim to have an office at 953 N. Plum Grove Road, Schaumburg, Illinois. The President of MAQ Technologies is Mohammed Quraishi,[1] also known as Rasheed Quraishi and Mohammed AR

---

[1] On December 17, 1998, the Anti-Fraud Unit, Consulate General of the United States, concluded that Mohammed Quraishi's own H-1B visa application, sponsored by Megasystems, had been obtained through fraud. The Immigration and Naturalization Service subsequently revoked Quraishi's visa on August 3, 1999, but Quraishi remained in the country and actively involved in the

Quraishi. MAQ Technologies describes itself as a "professional services firm that delivers IT Solutions through consulting, outsourcing and strategic staffing." In addition to claiming the same Illinois office and to provide the same services, both Megasystems and MAQ Technologies share an office location and phone number, and the officers of both companies appear on the other's payroll statement and both have provided almost identical employment letters in the H-1B visa applications submitted to the United States.

## *The H-1B Application of CI-1*

15. In June 2004, law enforcement agents interviewed a Cooperating Individual ("CI-1"). In the interview, CI-1, who is an alien, said that he/she paid a conduit a large sum of money to facilitate his/her fraudulent admission to the United States pursuant to a H-1B visa. In summary, CI-1 said that MAQ Technologies falsely represented to the United States that the company would employ CI-1. Based on this false representation, an H-1B visa was issued to CI-1. He/she entered the United States with this H-1B visa. However, CI-1 has never been employed by MAQ Technologies.

---

operations of both Megasystems and MAQ Technologies, until his arrest on or about November 19, 2004, on charges including Encouraging and Inducing Aliens to Come To, Enter, and Reside in the United States and Witness Tampering. (*United States v. Quraishi, et al.*, Criminal Action No. 04-10345-NMG)

-8-

16.   On November 27, 2000, MAQ Technologies electronically filed an ETA 9035 on behalf of CI-1.   The Labor Conditional Application was for a H-1B specialty occupation computer programmer position for a salary of $40,000.00 to $45,000.00.  The application was signed by David J. Francis, Vice President of Human Resources, MAQ Technologies, Canton, Massachusetts.   The application was approved by the Department of Labor on December 1, 2000.

17.   CI-1's immigration visa petition file includes supporting documentation and letters attesting to CI-1's experience, submitted by the president of MAQ Technologies, President Rasheed Quraishi, and dated February 28, 2000.  The petition states that CI-1 would be employed as a computer programmer /analyst and would earn a salary of $45,000 a year.  The petition was signed by the Vice President for Human Resources David J. Francis, and dated November 15, 2000.  On March 12, 2001, INS approved the I-129 petition for a visa based upon documentation submitted by representatives at MAQ Technologies, including the DOL ETA 9035 certification.   The visa was valid through January 15, 2004.   On May 14, 2001, the Department of State issued CI-1 a United States H-1B Non-immigrant Visa, FOIL Number 43555306.  The visa was issued at Chennai, India, and was valid until January 15, 2004.  The visa contains petition number 05551007 and reflects MAQ Technologies as the sponsoring company.  DHS indices confirm that the visa was used

-9-

by CI-1 to enter the United Sates on or about June 10, 2001, at or near New York.

18. When CI-1 arrived in the United States on or about June 10, 2001, he/she was informed by Rasheed Quraishi that there was no computer job available fcr CI-1 at MAQ/Megasystems. According to CI-1, Rasheed informed CI-1 that MAQ/Megasystemes had a condominium available in Canton (the Walnut Street Condo) where CI-1 could stay and pay rent to Aziz Quraishi. Rasheed instructed CI-1 to stay in the Walnut Street Condo and try to find work by himself/herself. Except for a short visit to Virginia to visit friends sometime during 2001 or 2002, CI-1 lived in the Walnut Street Condo from July 2001 until October 8, 2004.

### The fraudulent employment scheme using the subject accounts

19. Using the subject accounts, Rasheed engaged CI-1 in a fraudulent employment pay stub/pay back scheme. In July 2004, CI-1 provided law enforcement officers with several fraudulent pay stubs reflecting that he/she worked for MAQ Technologies in Schaumburg, Illinois, as a computer programmer from June 30, 2003 to December 4, 2003. In addition, a review of DOL indices indicate that MAQ Technologies submitted information indicating that CI-1 has been employed at MAQ Technologies in Massachusetts, beginning in 2003. MAQ reported that CI-1 was paid $9000 in the second quarter of 2003; $9000 in the third quarter; $6000 in the fourth quarter; and $9750 in the first quarter of 2004. Despite the information

-10-

reflected on the fraudulent pay stubs and in the reports submitted by MAQ to the government, CI-1 has stated that he/she never worked for MAQ technologies or Megasystems and had never lived or worked in Illinois. In fact, during the time period reflected by the pay stubs, CI-1 had been living in the Walnut Street Condo and had worked as a clerk at a convenience store in Massachusetts.

20. CI-1 informed law enforcement that the false employment stubs and checks were mailed to him/her from Rasheed who lived in Illinois, and that Rasheed provided CI-1 with a series of fraudulent employment pay stubs and checks drawn on the MAQ account, giving the appearance that CI-1 was a full-time employee of MAQ/Megasystems. Records for the MAQ Charter One Account reflect that this account was opened on May 7, 2003, by Rasheed.

21. The MAQ Charter One account was used to make fraudulent payments to CI-1, a purported employee, in order to make it appear that CI-1 was employed by MAQ/Megasystems, allowing CI-1 to maintain his/her visa status and reside in the United States illegally, without being detected by law enforcement. From on or about June 30, 2003, through December 4, 2003, a total of seven company checks from MAQ Technologies were written on the MAQ Charter One bank account, signed by Rasheed and made payable to CI-1. The total of these seven checks was $15,875.34. These checks, purportedly for CI-1's employment by MAQ, have the letterhead of

-11-

MAQ Technologies, indicating its address is 953 North Plum Grove D. Schaumburg, Illinois 60173.

22. Specifically, the MAQ Charter One account statements reflect that the following checks, all made out to CI-1, were paid from the MAQ Charter One account on the following dates: check 313 for $2,255.57 on August 4, 2003; check 329 for $2,271.99 on September 10, 2003; check 350 for $2,271.99 on October 16, 2003; check 378 for $2,271.99 on November 10, 2003; check 408 for $2,271.99 on December 15, 2003; check 489 for $2,271.99 on January 14, 2004; and, check 447 for $2,259.82 on January 7, 2004.

23. After having received the purported employment payments from the MAQ Charter One account, CI-1 was instructed to deposit the checks drawn on the MAQ Charter One account into CI-1's own personal account, and then to write checks on CI-1's personal account, made out to Rasheed. These checks were then deposited into the Rasheed Charter One personal account. In addition to repaying the purported salary, CI-1 was also required to pay an additional fee to Rasheed, which was also deposited into the Rasheed Charter One personal account. The total amount of the checks, which were paid by CI-1 to Rasheed and deposited into the Rasheed Charter One personal account was $20,496.65.

24. CI-1 was instructed to make out these checks to the name of "Mohammed A. Quaraishi." CI-1 has provided an electronic message dated July 13, 2003, sent to CI-1 by Rasheed Quraishi,

-12-

containing this instruction.  The e-mail was entitled "info" and the text stated, in its entirety:

Check Name: Mohammed A Quaraishi,

Thanks

25.  The signature block of the e-mail read:

Rasheed Quaraishi
MAQ Technologies Inc.
953 N. Plum Grove RD, Suite #D
Schaumburg, IL 60173
Ph: 847-619-5009
Fax: 847-619-5166
Cell: 781-367-0628
Email : rasheed@maqtechnologies.com
Website:www.maqtechnolgies.com

26.  In addition, Rasheed instructed CI-1 to break the payments up into separate checks, which were then deposited into the Rasheed Charter One personal account. Based on my training an experience, money launderers often divide deposits into a series of separate checks to avoid detection by law enforcement, and to conceal or disguise the source or nature of the funds.

27.  Bank records indicate that from July 23, 2003, through December 29, 2003, seventeen (17) checks, totalling $20,496.65, written by CI-1 and made out to "Mohammed A Quraishi", were deposited into the Rasheed Charter One personal account.  All the personal checks that had legible endorsements were signed by Rasheed Quaraishi.  The name and signature of Rasheed Quraishi appears on the Bank Deposit Agreement, and appears to be similar to the endorsements on the checks.

-13-

28. Rasheed then engaged in a series of monetary transactions, transferring funds from the Rasheed Charter One personal account to the MAQ Technologies Charter One account. During the period June 20, 2003, to May 14, 2004, $155,718.00 was transferred from the Rasheed Charter One personal account to the MAQ Technologies Charter One Account.

### *Extension of CI-1's H-1B Visa*

29. CI-1 informed law enforcement that, beginning in December 2003, he/she discussed applying for a fraudulent extension of his/her H-1B visa with Qaiyum Quraishi. Qaiyum indicated that he would assist CI-1 in obtaining a fraudulent visa extension for a fee of $3000. CI-1 provided law enforcement with a $3000 negotiated check from CI-1's account. This check, numbered 210 and dated January 15, 2004, is made payable to MAQ Technologies, Inc. The back of the check reflects the signature of "Qaiyum Quraishi" and indicates that it was deposited at Fleet Bank 9418300677, held in the name of MAQ Technologies Inc./Abdul Aziz Quaraishi and Ather Haq at Fleet Bank (the MAQ Fleet Account).

30. In December 2003, MAQ Technologies submitted Form I-129 for the extension of CI-1's visa, incorporating the fraudulent pay stubs. The paperwork was signed by Samu Thomas, Director of HR, and indicated that CI-1 was presently a computer programmer at MAQ and that the company wanted to continue to employ him/her. The extension was approved on December 30, 2003.

-14-

### The Walnut Street Condo

31. In addition, the Quraishi brothers maintained a condominum where they encouraged aliens who were in the United States unlawfully and were purportedly working for MAQ/Megasystems to reside. This condominium was located at 80 Walnut Street, Unit 401, Canton Massachusetts 02021 ("the Walnut Street Condo").

32. On June 25, 2004, as part of this investigation, a federal search warrant was executed at Megasystems. During the course of the search, federal agents discovered a condominium purchase and sales agreement dated August 29, 2000 for the purchase of 80 Walnut Street, Unit 401, Canton, Massachusetts. This document indicated that the purchaser of the property was Megasystems, Inc. The purchase and sale agreement was signed by Rasheed Quraishi.

33. The deed for the Walnut Street Condo, dated September 25, 2000, indicated that the purchaser of the Walnut Street Condo was Aziz Quraishi for a price of $115,000. A mortgage of $92,000 was held by Fleet Mortgage Corporation, who apparently at some point transferred the mortgage to Washington Mutual Bank. The mortgage was discharged on February 4, 2003. The recipient of the discharge was Aziz Quraishi.

34. In April 2003, the Canton police received a report of suspicious activity occurring at the Walnut Street Condo. Neighbors reported frequently observing males described as "Middle Eastern" arriving at and leaving the Walnut Street Condo, often

-15-

carrying laptop computers and attache cases. On April 23, 2003, at approximately 6:00 am, a team consisting of federal and local law enforcement agents arrived at the Walnut Street Condo. A total of eight males were found in the two-bedroom apartment, many of whom were sleeping on mattresses on the floor. All the occupants were questioned for immigration status purposes and all were found to have H-1B visas which were sponsored by Megasystems. The occupants stated that Qaiyum Quraishi was the owner of the Walnut Street Condo and was also the owner of Megasystems. The occupants stated that they each paid approximately $200/month rent for living in the Walnut Street Condo, and that the rent was deducted from their $45,000 a year salaries.

35. Also on June 25, 2004, Joint Terrorism Task Force Special Agent Galen Nace encountered CI-1 at the Walnut Street Condo. CI-1 informed Nace that he/she was not working for MAQ Technologies and that he/she was working at a convenience store. CI-1 knew that the FBI previously "raided" the Walnut Street Condo before and stated that he/she was not home at the time of the raid. Later, CI-1 stated that he/she had resided in the Walnut Street Condo since 2001 and that Aziz Quraishi was responsible for collecting rent from the foreign nationals living in the Walnut Street Condo. CI-1 further stated that, at any one time, as many as 15 foreign nationals had lived in the Walnut Street Condo.

36. During the time that CI-1 was involved in the fraudulent employment scheme described above, CI-1 was required to pay $240

-16-

monthly as rent for his residence at the Walnut Street Condo. CI-1 made these rent payments to Aziz Quraishi, who was the record owner of the Walnut Street Condo and the CEO of Megasystems. CI-1 has provided three cancelled checks, two of which were made payable to Aziz Quraishi and one to Abdul Aziz (which is an alias of Aziz Quraishi). Each of these check was in amount of $240. All of the checks were negotiated. Two of the checks are endorsed by Aziz Quraishi, while the other check is endorsed by Qaiyim Quraishi.

### *Aziz's Statements to Law Enforcement Agents on June 25, 2004*

37. On June 25, 2004, federal agents executed a search warrant issued in District of Massachusetts (M.J. No. 04-1803-CBS) at Megasystems Inc., 500 Chapman Street, Canton, Massachusetts. During the execution of this search warrant, Aziz Quraishi was interviewed by FBI Special Agent Robert Doherty and me. After being advised of his rights and verbally waiving those rights Aziz stated that he was the CEO of Megasystems. Aziz indicated that his brother, Rasheed, was the vice-president of the company and his brother, Qaiyum, was the director of human resources. Aziz said that Rasheed currently worked in Illinos for MAQ Technologies. Aziz stated that, originally, MAQ had been part of Megasystems, but asserted that the two were now independent companies. Aziz admitted that the Quraishi brothers had invented a Megasystems corporate officer named "David J. Francis" and had used this fraudulent name on visa applications. Aziz said that the name "David J. Francis" had been chosen because it sounded "American,"

-17-

enabling the visas to be approved more quickly by the government. Aziz further stated that "David J. Francis" had never been an employee of MAQ/Megasystems, and that it was his brother Qaiyum's idea to make up the name. Aziz estimated that the company had filed between 25-50 petitions utilizing the false name of David J. Francis.

38. Furthermore, Aziz admitted that MAQ/Megasystems had assisted between four to five aliens with applying for H-1B visas, although the aliens never worked for MAQ/Megasystems. Aziz stated that they informed the aliens to find some type of work in the computer field. Aziz asserted that he had not charged the aliens a fee, and that this assistance was provided as a courtesy so that the aliens could better themselves in the United States. Aziz admitted that, on some occasions, aliens were provided room and board at the Walnut Street Condo. Aziz stated that the company owned the Walnut Street Condo and was responsible for paying all the expenses for the aliens, and that the aliens had paid nothing. Aziz further stated that the company paid all the rent, food, and lodging for all the aliens that resided at the Walnut Street Condo. Aziz admitted that the Walnut Street Condo was set up solely as a place for workers to stay if they had no place to go. Aziz estimated that approximately 50-70 aliens with H-1B visas had stayed at the Walnut Street Condo over time. Aziz stated that he personally had never lived in the Walnut Street Condo.

-18-

39. Aziz also admitted to Megasystems/MAQ's participation in the fraudulent employment scheme described above. Aziz indicated that, if aliens wanted to maintain lawful status in the United States, they were sometimes required by INS to show that they had pay stubs from Megasystems. Aziz stated that he would provide certain aliens who did not work for Megasystems with a number of pay stubs, each indicating that they had earned approximately $3,500 from Megasystems. Aziz stated that the figure was based on the $45,000 annual salary that Megasystems had falsely indicated to the government that the alien would earn. Aziz stated that Megasystems would provide up to six months of pay stubs for each alien. According to Aziz, the aliens would then pay back to Megasystems the money represented by the pay stubs, plus an additional amount purportedly representing taxes. Aziz claimed that this additional amount was approximately 10-20 percent of the total amount paid. Aziz estimated that Megasystems had sponsored approximately 300 aliens, and that approximately 180-190 of those aliens were no longer working for Megasystems. Aziz admitted that he had not reported the change of employment for these aliens to the government. In addition, Aziz estimated that approximately 10-15 of the aliens sponsored by Megasystems had, in fact, never worked for Megasystems.

40. When asked for specific names of aliens sponsored for H-1B visas by Megasystems, but who, in fact, had never worked at Megasystems, Aziz provided several names. Aziz cited employee 127,

-19-

Sanjay Bahugna, who was listed on the Megasystems payroll as having last been paid on October 31, 2003. Aziz stated that Sanjay came to the United States in 2003, stayed at the Walnut Street Condo for two weeks, but had never worked for Megasystems.

41. In addition, Aziz admitted that he had assisted 10-20 aliens with applying for extensions for their H-1B visas. Aziz admitted that these people were not working for Megasystems at the time he assisted them in seeking their extensions.

## Recorded Conversations with Aziz and Qaiyum Quraishi

42. From September 10 through October 4, 2004, CI-1 met and recorded conversations with Aziz and Qaiyum Quraishi under the direction of law enforcement. The meetings and recordings took place at Megasystems, 500 Chapman Street, Canton, Massachusetts, and the Quraishi home located 38 Kevin Clancy Way, Stoughton, Massachusetts. At the meetings, Aziz and Qaiyum discussed visa fraud, money payments, fraudulent documents, and the current problems with the police relating to aliens staying at the Walnut Street Condo. Several of the meetings focused on Aziz and Qaiyum arranging the continued harboring and smuggling of CI-1 from the United States to India and back into the United States. CI-1 has informed law enforcement that because of the ongoing investigation the Quraishi brothers wanted to clear out the Walnut Street Condo of all foreign nationals by the first week of October. According to CI-1, the Quraishi brothers indicated that, because of the

-20-

ongoing problems with law enforcement, they were considering selling the Walnut Street Condo in the near future.

43. All of the aforementioned meetings between CI-1, Aziz, and Qaiyum were monitored and consensually recorded by law enforcement. However, due to equipment failure the first meeting on September 10, 2004, was not successfully recorded. The subsequent meetings were successfully recorded. Because the recordings were in a foreign language, CI-1 was debriefed immediately after each meeting and transcripts were prepared by the FBI. I have reviewed the transcripts and they are consistent with the information provided by CI-1.

44. Prior to these conversations, in late August 2004, CI-1 reported that the Quraishi brothers were concerned about the Walnut Street Condo due to the investigation. Aziz informed CI-1 that he/she would have to leave the Walnut Street Condo, find a new place to live, and possibly leave the United States. On September 14, 2004, Qaiyum unexpectedly approached CI-1 and informed him/her that he/she would have to go back to India. Qaiyum said that it would be best to leave the country because of the investigation and that it would be a good idea for CI-1 to leave the United States for a couple of months, making it appear that CI-1 was taking an extended vacation in India. Qaiyum instructed CI-1 that when he/she returned from India, he/she should go directly to Chicago, because that is where he/she was purportedly employed by MAQ Technologies. Qaiyum further assured CI-1 that if the police

-21-

inquired as to his/her location, Qaiyum would say that CI-1 was on vacation in India. On September 24, 2004, in a recorded conversation, Qaiyum told CI-1 that Qaiyum would purchase an airline ticket for CI-1 with the $2000 that CI-1 had previously given Qaiyum for a green card. Qaiyum, however, required CI-1 to write a blank check for the ticket so it would appear that the CI-1 had paid for the ticket with money from CI-1's checking account. When CI-1 told Qaiyum that there was not enough money in his/her checking account to cover the check, Qaiyum said that he would deposit money into CI-1's account to cover the check.

45. On October 4, 2004, a cash payment of $2000 was deposited into CI-1's checking account.

## *Federal Civil Seizure Warrant*

46. On November 1, 2004, a civil seizure warrant was issued by United States Magistrate Charles B. Swartwood, III, United States District Court for the District of Massachusetts. This warrant authorized the seizure of the following:

- The contents of bank account 8620008235, held in the name MAQ Technologies, Inc./Mohammed A.R. Quaraishi, at Charter One Bank, NA. (the MAQ Charter One account); and

- The contents of bank account 8620398000, held in the name of Mahammed A.R. Quaraishi, at Charter One Bank, NA (the Rasheed Charter One personal account).

48. On November 2, 2004, Charter One Bank closed the two accounts, pursuant to the civil seizure warrant. In compliance with the seizure warrant, two checks were made payable to U.S. Immigration and Customs Enforcement, as follows: 1) Check No.

15067389 in the amount of $4,468.18 representing the balance in account number 08620398000; and, 2) Check No. 15067388 in the amount of $103,324.22, representing the balance in account number 08620008235.   The two checks, totaling $107,792.40, were turned over to the Fines, Penalties, and Forfeitures Office of U.S. Customs and Border Protection, and the seized currency has been deposited in a suspense account until the resolution of this forfeiture action.

## Federal Criminal Indictment

49.   On November 18, 2004, a federal grand jury sitting in the District of Massachusetts returned a Five-Count Indictment charging Mohammed Abdul Rasheed Quraishi, Mohammed Abdul Qayium Quraishi, and Mohammed Abdul Aziz Quraishi, with:  Encouraging and Inducing Aliens to Come To, Enter, and Reside in the United States in Violation of Law, in violation of 8 U.S.C. §1324; Witness Tampering, in violation of 18 U.S.C. §1512(b)(3); and Aiding and Abetting, in violation of 18 U.S.C. §2, _United States v. Quraishi, et al._, Criminal Action No. 04-10345-NMG.   The Indictment also included a Forfeiture Allegation that provided that as result of committing one or more of the offenses alleged in Counts One, Two and Three of the Indictment, the defendants, upon conviction, shall forfeit to the United States, pursuant to 18 U.S.C. §982(a)(6)(A), any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense; and any property real or personal

-23-

that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; or that is used to facilitate, or is intended to be used to facilitate the commission of the offense.

## Conclusion

50.  In conclusion, based on the information provided in this affidavit, I have probable cause to believe that the above-described Defendant Accounts were involved in and were used to conduct and tc facilitate money laundering activities, in violation of 18 U.S.C. §1956 and therefore, are subject to seizure and forfeiture to the United States, pursuant to 18 U.S.C. §981(a)(1)(A).

Signed under the pains and penalties of perjury this _18th_ day of March, 2005.

Richard M. Deasy,
Supervisory Special Agent
United States Bureau of Immigration
and Customs Enforcement

-24-

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United States of America v.

## DEFENDANTS

$103,342.22 in U.S. Currency, and $43,468.18 in U.S. Currency

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jennifer H. Zacks, Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA  02210   (617) 748-3100

ATTORNEYS (IF KNOWN)

05-10515

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | | ☐ 371 Truth in Lending | ☒ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Government seeks the forfeiture of the Defendant Currency pursuant to 18 U.S.C. §981(a)(1)(A).

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE  Gorton

DOCKET NUMBER  CR 04-10345-NMG

DATE  3/15/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)   United States of America v. $103,342.22 in U.S. Currency, et al.,

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   ___    I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___    II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                       740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.      for patent, trademark or copyright cases

   ___    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                       315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                       380, 385, 450, 891.

   _X_    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                       690, 810, 861-865, 870, 871, 875, 900.

   ___    V.      150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    United States v. Quraishi, et al., CR No. 04-10345-NMG

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                         YES ☐      NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                         YES ☐      NO ☒

    If so, is the u.s.a. or an officer, agent or employee of the u.s. a party?

                                         YES ☐      NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 usc §2284?

                                         YES ☐      NO ☒

7. Do **all** of the parties in this action, excluding governmental agencies of the united states and the commonwealth of massachusetts ("governmental agencies"),  residing in massachusetts reside in the same division? - (See local rule 40.1(d)).

    n/a                                     YES ☐      NO ☐

         A.      If yes, in which division do **all** of the non-governmental parties reside?

            Eastern Division ☐         Central Division ☐         Western Division ☐

         B.      If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,  residing in Massachusetts reside?

            Eastern Division ☐         Central Division ☐         Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

    n/a                                     YES ☐      NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Jennifer H. Zacks, Assistant U.S. Attorney

ADDRESS  United States Attorney's Office, 1 Courthouse Way, Suite 9200, Boston, MA  02210

TELEPHONE NO.  (617) 748-3100

(Cover sheet local.wpd - 09/12/02)